John T. CASTNER

v.

EXXON COMPANY, U.S.A. and
Marlin Rautzhan.

Civ. A. No. 83–0470.

United States District Court,
E.D. Pennsylvania.

May 10, 1983.

Robert Weiner, Philadelphia, Pa., for plaintiff.

John M. Phelan, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

On January 27, 1982, John T. Castner, a resident of East Greenville, Pennsylvania, undertook to invoke this court's diversity jurisdiction by filing a complaint against Exxon Company U.S.A., a New Jersey corporation. *Castner v. Exxon Company,* Civil Action No. 82–0364.

The gravamen of the claim was as follows: Castner alleged that in the winter of 1978 he and his wife lived in New Jersey where he was a construction worker. At that time, according to Castner, he visited a friend who operated an Exxon station in Dorneyville, Pennsylvania. The friend told Castner that there was an Exxon station in Quakertown which had been closed but which could be rented from Exxon; the friend urged Castner to get in touch with an Exxon representative named Marlin Rautzhan. Castner talked to Rautzhan and was told that the shut Quakertown station "had great potential." Castner advised Rautzhan that he would only consider a long-term lease since operation of a station in Quakertown would require moving from New Jersey to Pennsylvania. Rautzhan told Castner that Exxon's interest in the site was itself only a leasehold but that Exxon had acquired options from the site owner to renew its lease for thirteen years and Exxon intended to exercise those options. Pursuant to further negotiation, Castner signed a one-year lease with Exxon; Castner's reiteration that he wanted a long-term lease was met by an Exxon assurance that the one-year lease was merely a formality and that if he did a good job at the station the lease would automatically be renewed. A year later, in 1979, Exxon and Castner executed a renewal lease, this one for a three-year term expiring March 31, 1982. But in January of 1980, Exxon wrote Castner that Exxon's leasehold would expire in April of 1980 and would not be renewed. A month later, Exxon rescinded the January 15 letter. However, on April 21, 1980, Exxon wrote again to Castner stating that "the underlying lease at the service station property which you are leasing from Exxon will now expire on April 30, 1981" and that the termination would be absolute inasmuch as Exxon had no renewal options available, for which reason "you must vacate the premises on or before April 30, 1981." According to the complaint, Castner did undertake to negotiate a renewal of the lease with the owner of the site, but this arrangement fell through because Exxon would not authorize Castner to continue at that site as an Exxon franchisee.

The foregoing factual allegations gave rise, according to the complaint, to four causes of action embodied in four counts. The *first* count alleged that Exxon's recitals to Castner of its intention to exercise its lease renewal options to the full were negligent misrepresentations calculated "to influence Castner to enter into the first lease with Exxon" and leading to the close of Castner's business in the spring of 1981 to his great detriment. The *second* count, which incorporated by reference all of the foregoing allegations, went on to assert that Castner's loss of his business "repre-

senting his lifetime savings and aspirations" led to the breakup of his marriage. The *third* count, incorporating all previous allegations, asserted that Exxon had breached a duty of good faith which it owed to Castner as a franchisee in declining to continue supplying Castner with Exxon gasoline and Exxon credit cards and thereby foreclosing Castner's opportunity to continue operating the Quakertown station by renting directly from Mr. Edge. The *fourth* count incorporated by reference all the previous allegations and asserted that "Exxon breached its undertaking to Castner that it would exercise its option to renew the lease with the owner to the full extent of the option."

Castner's complaint was insufficient to sustain diversity jurisdiction in that Castner was alleged only to be "residing" in Pennsylvania rather than a citizen thereof. However, Exxon filed an answer rather than challenging the pleading on that jurisdictional ground. Thereafter, on September 14, 1982, there was filed in the Clerk's Office a stipulation for dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).

On December 6, 1982 Castner filed suit in the Court of Common Pleas for Bucks County. In this new action there were two defendants: Exxon and Marlin Rautzhan. The new complaint was virtually identical with the federal court complaint dismissed by stipulation in September of 1982. The essential differences were that the new complaint did not contain two paragraphs which had asserted diversity of citizenship as the basis for federal court jurisdiction and the occurrence within the Eastern District of Pennsylvania of events supporting venue here. The four substantive counts of the new complaint repeated verbatim the four counts of the old complaint.[1]

Although in its caption the new complaint denominated Rautzhan as a defendant, and an introductory allegation referred to Rautzhan as "an individual residing in the Commonwealth of Pennsylvania," no allegation identified him as a "defendant"; moreover, just as in the federal court complaint, Rautzhan went entirely unmentioned in the paragraphs explicating each of the substantive counts.

Defendant Exxon was served with the new complaint. Defendant Rautzhan was not. Thereupon, on January 28, 1983, there was filed in this court, on behalf of Exxon and Rautzhan, a "Petition for Removal."

On March 30, 1983, Castner filed two motions. One of these was a "Motion to Remand Removal Action", and the other a "Motion to Replead After Removal." The latter motion sought to add a fifth count alleging that the negligent representations of Rautzhan "acting as the agent or servant of Exxon" caused the loss of Castner's business and the breakup of his marriage.

The motion to remand asserts that Castner and Rautzhan "were both residing in Pennsylvania at the time the suit was commenced. Defendant [Rautzhan] was a necessary and indispensable party to this proceeding, and the joinder of said defendant destroys this Court's jurisdiction pursuant to 28 U.S.C. 1332." The opposition to the motion to remand is grounded on two independent propositions. The first is that Rautzhan, the assertedly non-diverse defendant, was never served. The second is that the joinder of Rautzhan as a party defendant in the Court of Common Pleas was fraudulent, undertaken to prevent the exercise by Exxon of its entitlement to invoke this court's diversity jurisdiction

---

1. Because the new complaint did not contain the two jurisdiction and venue paragraphs (paragraphs 3 and 4) of the old complaint, it contained only thirty numbered paragraphs rather than thirty-two. Taken together with the verbatim repetition of the four substantive counts, the abbreviation produced certain pleading anomalies: Thus paragraph 19 of the new complaint (the first paragraph of count I) "incorporates paragraphs 1 through 20 by ref- erence"; paragraph 23 of the new complaint (the first paragraph of count II) "incorporates paragraphs 1 through 26 by reference"; paragraph 25 of the new complaint (the first paragraph of count III) "incorporates paragraphs 1 through 24 by reference"; and paragraph 28 of the new complaint (the first paragraph of count IV) "incorporates paragraphs 1 through 29 by reference ..."

through removal. These contentions will be considered in turn.

## I.

### The Failure to Serve Rautzhan

■ The lawsuit which Exxon has sought to remove is one brought by Castner, a Pennsylvanian, against Rautzhan, another Pennsylvanian, and Exxon, a New Jersey corporation. So described, the lawsuit would appear not to fit within the diversity rubric since there is a Pennsylvanian on each side of the case. But Exxon argues that plaintiff Castner's failure to serve defendant Rautzhan opens the way for removal by the single defendant actually served—namely, Exxon. This is so, according to Exxon, for the reason that 28 U.S.C. § 1441(b) provides that non-federal-question cases such as this one "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." And the argument has considerable force, for the statutory language certainly "implies that a resident defendant who has not been served may be ignored in determining removability." 14 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3723, at 609 (1976). It appears, however, that the implication is unwarranted. Thus, Professor Moore, after setting forth the language of section 1441(b), admonishes that it

> should not ... be inferred that an unserved *resident* defendant can automatically be ignored at the time of removal by the other defendant or defendants. Despite the provision—joined *and* served—the fact that service has not yet been made on a defendant-citizen of the state in which the action is brought has been held insufficient in itself to allow him to be disregarded. This theory is a practical one. Inasmuch as service can ordinarily be obtained over a citizen of the state where the action pends, and if service prior to the removal petition would have precluded removal, disregard of the yet unserved resident-defendant would court needless jurisdictional prob-

lems. And one cannot ignore the practical reality that simultaneous service upon multiple defendants will not occur.

1A *Moore's Federal Practice* ¶ 0.168[3.–2–2], at 552–54 (2d ed.1983) (footnotes omitted; emphasis in original). *See also Pecherski v. General Motors Corporation,* 636 F.2d 1156, 1160 (8th Cir.1981); *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 78–79 (9th Cir. 1979); *Chappell v. SCA Services, Inc.,* 540 F.Supp. 1087, 1090–91 (C.D.Ill.1982). Accordingly, the fact that Rautzhan has not yet been served does not mean that this court may ignore his Pennsylvania connection in determining whether the complaint filed in the Court of Common Pleas falls within this court's diversity jurisdiction. Wherefore, the inquiry shifts to Exxon's alternative justification for removal— namely, that the joinder of Rautzhan was "fraudulent."

## II.

### Is the Joinder of Rautzhan "fraudulent"?

In support of its contention that the joinder of Rautzhan was a "fraudulent" device to foreclose this court from assuming jurisdiction via removal, defendant Exxon contends that Rautzhan is not an indispensable party within the meaning of Federal Rule 19. Castner argues to the contrary.

■ "Indispensable party" indeed appears as the talismanic concept in certain of the removal cases. For cases in this district, see *A.E. Staley Manufacturing Company v. Fischback & Moore, Inc.,* 353 F.Supp. 578, 582 (E.D.Pa.1973); *Aberle Hosiery Company v. American Arbitration Association,* 337 F.Supp. 90, 92 (E.D.Pa.), appeal dismissed, 461 F.2d 1005 (3rd Cir.1972). But I agree with Chief Judge Nealon's conclusion that in the context of an assertedly fraudulent joinder the proper question to be asked is not whether the defendant whose joinder is challenged is an indispensable party, but whether there is a "real cause of action asserted against" that defendant. *Richardson v. Exxon,* 491 F.Supp. 201, 203 (M.D.Pa.1980). This analysis is consistent with Professor Moore's explication: "The

joinder may be fraudulent if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state. If, however, there is a real possibility that the plaintiff has stated a cause of action, the joinder is not fraudulent, and the cause should be remanded." 1A *Moore's Federal Practice* ¶ 0.161[2], at 273–74 (2d ed. 1983) (footnotes omitted); *see B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981).

In this instance, however, there is no "real possibility that the plaintiff has stated a cause of action" against Rautzhan in the complaint filed in the Court of Common Pleas. As noted above, that complaint follows the dismissed federal court complaint almost word for word. And, as is apparent from the summary of the federal court complaint at the beginning of this Memorandum, in the paragraphs of the complaint that explicate Castner's four substantive counts, Exxon's alleged liability appears front and center but Rautzhan plays no part.

To escape from this, plaintiff Castner has accompanied his motion to remand with a motion to amend his complaint by adding a fifth count aimed directly at Rautzhan. But plaintiff cannot in this way bootstrap his way into remand. As Professor Wright has observed in the 1983 edition of his *Law of Federal Courts* (page 215):

> Generally the right of removal is decided by the pleadings, viewed as of the time when the petition for removal is filed. A case not removable when commenced may later become removable under some circumstances, as where the plaintiff has amended his pleadings to change the nature of the claim, or has dropped a party whose presence prevented diversity. The plaintiff cannot, however, take action to defeat federal jurisdiction and force remand after the case has been properly removed.

■ In sum, since the complaint filed in the Court of Common Pleas states no cause

of action against Rautzhan, the fact that he is labelled "defendant" in the caption is no bar to the removal of the case to this court—provided that there is diversity of citizenship between plaintiff Castner and defendant Exxon.

*Conclusion*

■ However, the record as it stands does not demonstrate the required diversity. As the Common Pleas complaint tracks the complaint filed in 1982 in this court, it repeats in paragraph 1 the jurisdictionally defective allegation in paragraph 1 of the federal court complaint—namely, that plaintiff Castner "is an individual currently residing" in East Greenville, Pennsylvania. And the deficiency is not cured by Exxon's removal petition which recites that "As alleged in his Complaint, plaintiff is a resident of the Commonwealth of Pennsylvania." Because the record does not show that Castner was at the initiation and at the time of the attempted removal of the Common Pleas case a *citizen* of a state other than New Jersey, the state of defendant Exxon's incorporation,[2] plaintiff Castner's motion to remand is granted in an Order filed today.

---

2. It is also notable that the Common Pleas complaint and the removal petition identify Rautzhan as a Pennsylvania resident but are silent about his citizenship.